# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### NO: 16-60508

**VAUGHN PERRET**
**and CHARLES LEARY**                                                    **APPELLANTS**

**VERSUS**

**DOUG K. HANDSHOE**                                                     **APPELLEE**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

---

## BRIEF OF APPELLANTS
## VAUGHN PERRET AND CHARLES LEARY

Charles Leary & Vaughn Perret, *pro se*
Email: foodvacation@gmail.com
140 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
Canada
Telephone: (902) 761-2142
Facsimile: (800) 980-0713



# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

## NO: 16-60508

**VAUGHN PERRET**
**and CHARLES LEARY**                                        **APPELLANTS**

**VERSUS**

**DOUG K. HANDSHOE**                                          **APPELLEE**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

---

## BRIEF OF APPELLANTS
## VAUGHN PERRET AND CHARLES LEARY

Charles Leary & Vaughn Perret, *pro se*
Email:  foodvacation@gmail.com
140 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
Canada
Telephone: (902) 761-2142
Facsimile: (800) 980-0713

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned certifies that the following listed persons and entities as described in Rule 28.2.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal. Parties in interest are:

1.     Vaughn Perret and Charles Leary (Appellants), 140 Trout Point Road, Kemptville, Nova Scotia B5A 5X9.

2.     Trout Point Lodge, Limited, 189 Trout Point Road, E. Kemptville, Nova Scotia B5A 5X9

2.     Doug K. Handshoe (Appellee), 345 Carroll Avenue, Bay St. Louis, Mississippi 39520.

3.     Chief District Judge Louis Guirola, Jr., 2012 15th Street, Suite 814, Gulfport, MS 39501.

4.     Former Chief Magistrate Judge John Roper, 2012 15th Street, Suite 870, Gulfport, MS 39501.

5.     G. Gerald Cruthird, Esquire (Counsel for Appellee), Post Office Box 1050, Picayune, MS 39466.

6.     Jack E. Truitt, Esquire (former Counsel for Appellee), The Truitt Law Firm, LLC, 149 North New Hampshire Street, Covington, LA 70433.

7.      Henry Laird, Esquire (Former Counsel for Appellants), Jones Walker, Post Office Box 160, Gulfport, MS  39502.

8.      Judge Walker-Elrod, U.S. Court of Appeals for the Fifth Circuit (judge on previous appeal)

9.      Judge Graves, U.S. Court of Appeals for the Fifth Circuit (judge on previous appeal)

10.      Judge Reavley, U.S. Court of Appeals for the Fifth Circuit (judge on previous appeal)

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Vaughn Perret and Charles Leary do not request oral argument as the jurisdictional facts are straightforward, the subject is well briefed, and oral argument would not materially aid in the decisional process.

# TABLE OF CONTENTS

PAGES

CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . .iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

LIST OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                Factual Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Lack of Art. III Minimal Diversity of
    Citizenship Under the SPEECH ACT. . . . . . . . . . . . . . . . . . . . . . . .14

    Lack of Standing Based on Total
    Absence of Diversity Allegations  . . . . . . . . . . . . . . . . . . . . . . . . .20

    Rigorous Enforcement of Jurisdictional Limits . . . . . . . . . . . . . . . . 24

        Time of Filing Rule Applies . . . . . . . . . . . . . . . . . . . . . . . .26

        Total Absence of Allegations of Citizenship  . . . . . . . . . .29

    Fed.R.Civ.P 60(b)(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    Standard to Apply  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

iv

Standard to Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Finality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Reasonable Basis Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

District Court Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Case Law: Rule 60(b)(4)
and Diversity Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .52

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

CERTIFICATE OF COMPLIANCE WITH RULE 32(A). . . . . . . . . . . . . . . . 61

# **LIST OF AUTHORITIES**

<u>CASES</u>                                                          <u>PAGES</u>

*AMERICAN REALTY CAPITAL PROPERTIES*
*INCORPORATED v. Holland*,
No. CV-14-00673-PHX-DGC (D. Ariz. Oct. 8, 2014) . . . . . . . . . . . . . . . . . . . .46

*Americold Realty Trust v. Conagra Foods, Inc.*,
2016 W.L. 854159 (U.S. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 50, 51

*Arbaugh v. Y & H Corp.*, 546 U.S. 500,
126 S. Ct. 1235, 163
L. Ed. 2D 1097 (2006)                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Arena v. Graybar Elec. Co., Inc.*,
*669 F.3d 214 (5th Cir. 2012)*        . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 31

*AU Optronics Corp. v. South Carolina*,
699 F.3d 385 (4th Cir. 2012)           . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*B., INC. v. Miller Brewing Co.*,
663 F.2d 545 (5th Cir. 1981)           . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Baella-Silva v. Hulsey*, 454 F.3d 5 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 43, 53

*Bank One, Texas, NA v. Montle*,
964 F.2d 48 (1st Cir. 1992)           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Bogle v. Phillips Petroleum Co.*,
24 F.3d 758 (5th Cir. 1994)            . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Box v. DALLAS MEXICAN CONSULATE GENERAL*,
No. 14-10744 & 14-10953(5th Cir. Aug. 19, 2015). . . . . . . . . . . . . . . . . . . . . 41

*Brewer v. United Parcel Service, Inc.*, Case
Number CIV-04-1150-C (W.D. Okla. Dec. 2, 2005) . . . . . . . . . . . . . . . . . . . . .29

*Brown v. Astrue, 597 F. Supp.*
*2d 691 (N.D. Tex. 2009)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .59

*Brumfield v. Louisiana State Board of Education,*
No. 14-31010 (5th Cir. Nov. 10, 2015). . . . . . . . . . . . . . . . . . . . . . . . . .35, 37, 42

*Callon Petroleum Co. v. Frontier Ins. Co.,*
351 F.3d 204 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Carden v. Arkoma Associates,* 494 U.S. 185, 110 S. Ct.
1015, 108 L. Ed. 2D 157 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . .30, 49

Carter v. Fenner, 136 F.3d 1000,
1005 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36, 48

*Chapman* v. *Barney,* 129 U. S. 677 (1889). . . . . . . . . . . . . . . . . . . . . . . . . .32

*Check Group Canada Inc. v. Icer*
*Canada Corporation, 2010 NSSC 463* . . . . . . . . . . . . . . . . . . . . . 52

Chicot County Drainage Dist. v. Baxter
State Bank, 308 U.S. 371 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . .38-42

Clifton v. Heckler, 755
F.2d 1138 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

*Cook v. Toidze, 950 F. Supp.*
*2d 386 (D. Conn. 2013)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .57

*Coury v. Prot,* 85 F.3d 244 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . .31

*Craig v. Ontario Corp.,* 543
F.3d 872 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

*Doe v. Tangipahoa Parish School Bd.,*
*494 F.3d 494 (5th Cir. 2007)* . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

*Exxon Mobil Corp. v. Allapattah*
*Servs., Inc.*, 545 U.S. 546, 552 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Falise v. American Tobacco Co., 241
BR 63 (E.D.N.Y. 1999)                    . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*FELLOWES v. CHANGZHOU XINRUI*
*FELLOWES OFFICE EQPT.*,
759 F.3d 787 (7th Cir. 2014)             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Fifty Associates v. Prudential Insurance*
*Co. of America*, 446 F.2d 1187 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . .21

*Getty Oil, Div. Of Texaco v. Ins.*
*Co. of North Am.*, 841 F.2d 1254 (5th Cir. 1988) . . . . . . . . . . . . . . . 23, 24-26, 43

*Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct.
2641, 162 L. Ed. 2D 480 (2005)           . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 124
S. Ct. 1920, 158 L. Ed. 2D 866 (2004) . . . . . . . . . . . . . . . . . . . . . .*9*, 16, 26, 29-30

*Gschwind v. Cessna Aircraft Co.*,
*232 F.3d 1342 (10th Cir. 2000)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37, 52

*Harvey v. Grey Wolf Drilling Co.*,
*542 F.3d 1077 (5th Cir. 2008)*           . . . . . . . . . . . . . . . . . . . . . . . 33

*Haynes v. Felder*, 239
F.2d 868 (5th Cir. 1957)                 . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 45

HEAT OILFIELD RENTALS, LTD. v. VULCAN
OILFIELD SERVICES, LLC, Dist. Court,
WD Pennsylvania, No. 2:15-cv-332, (March 12, 2015) . . . . . . . . . . . . . . . . . .34

*Honneus v. Donovan,*
*691 F.2d 1 (1st Cir.1982)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .55

*Howery v. Allstate Ins. Co. 243 F.3d 912 (5ᵗʰ Circ. 2001)* . . . . . . . . . . .28, 35

*In re Crystal Power Co., Ltd.,* 641 F.3d 82 (5th Cir. 2011)     . . . . . . . . . . .23

*IN RE SMURFIT-STONE CONTAINER CORPORATION,*
No. 09-10235 (BLS (Bankr. D. Del. June 11, 2010). . . . . . . . . . . . . . . . . . . .. 30, 50

*Insurance Corp. of Ireland v. Compagnie des Bauxites*
*de Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) . . . . . . . .22

*Jackson v. Allen,* 132 U.S. 27,
10 S.Ct. 9, 33 L.Ed. 249 (1889)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Jerguson v. Blue Dot Inv., Inc.,*
659 F.2d 31 (5th Cir. 1981)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974). . . . .. . . . . . . . . . . . . . . . .40

*JPMorgan Chase Bank v. Traffic Stream*
*(BVI) Infrastructure Ltd.,* 536 U.S. 88,
122 S. Ct. 2054, 153 L. Ed. 2D 95 (2002). . . . . . . . . . . . . . . . . . . .. . . . . . . . 34

*Kanter v. Warner-Lambert Co.,* 265 F.3d 853 (9th Cir. 2001)     . . . . . . . . . . .31

*Kokkonen v. Guardian Life Ins. Co.*
*of America,* 511 U.S. 375, 114 S. Ct. 1673, 128 L. . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 21

*Langfitt v. Fed. Marine Terminals, Inc.,*
647 F.3d 1116, 1119 n.7 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Laskosky v. Laskosky,* 504 So.2d 726, 729 (Miss.1987). . . . . . . . . . . . . . . . . . 14

*Lew v. Moss,* 797 F.2d 747 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . .28

*Lowery v. Alabama Power Co.*, 483 F.3d
1184 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Maroney v. University Interscholastic League*,
764 F.2d 403 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . .21, 27

*Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.) . . . . . . . . . . . . . . . . . . . . . .31, 51

*Matter of Edwards*, 962 F.2d 641 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . .37

*McGovern v. American Airlines, Inc.*, 511
F.2d 653 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . .18

McNutt v. General Motors Acceptance Corp.
of Indiana, 298 U.S. 178, 189, 56 S.Ct.
780, 785, 80 L.Ed. 1135 (1935) . . . . . . . . . . . . . . . . . . . . . . . . .34

*Mississippi ex rel. Hood v. AU OPTRONICS*, 134 S. Ct. 736,
571 U.S., 187 L. Ed. 2D 654 (2014); . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Mitchell v. Maurer,* 293 U.S. 237, 243-44,
55 S.Ct. 162, 79 L.Ed. 338 (1934). . . . . . . . . . . . . . . . . . . . . . . . . . . .36

*Moss v. Voyager Ins. Companies*,
43 F. Supp. 2d 1298 (M.D. Ala. 1999). . . . . . . . . . . . . . . . . . . . . . . . . .41

*Nemaizer v. Baker,* 793
F.2d 58, 65 (C.A.2 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .36, 43

*Pennhurst State School & Hospital v. Halderman,*
465 U.S. 89, 119, 104 S.Ct.
900, 918, 79 L.Ed.2d 67 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 45

*Penteco Corp. v. Union Gas System*,
929 F.2d 1519 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . .54

x

*Picco v. Global Marine Drilling Co.,*
900 F.2d 846 (5th Cir. 1990) . . . . . . . . . . . . . . . . . .37, 41

*Prasad v. OCWEN LOAN SERVICING, LLC,*
No. 2: 15-cv-0555 KJM GGH PS (E.D. Cal. Aug. 5, 2015). . . . . . . . . . . . . . . . .21

*Pressroom Unions-Printers League*
*Income Security Fund v. Continental*
*Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) . . . . . . . . . . . . . . . . . .35

*Resnik v. La Paz Guest Ranch,*
289 F.2d 814 (9th Cir. 1961) . . . . . . . . . . . . . . . . .42

*Ruhrgas Ag v. Marathon Oil Co.,* 526 U.S. 574,
*119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)* . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Russell v. Basila Mfg. Co.,* 246 F.2d 432 (5th Cir. 1957). . . . . . . . . . . . . . . . .34

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
402 F.3d 1198 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

*Sellers v. O'CONNELL,* 701 F.2d 575
(6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Smallwood v. Illinois Cent. R. Co.,*
385 F.3d 568 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

*Stafford v. Mobil Oil Corp.,*
945 F.2d 803 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Standard Fire Ins. Co. v. Knowles,*
133 S. Ct. 1345, 568 U.S., 185 L. Ed. 2D 439 (2013). . . . . . . . . . . . . . . . . . . . . 27

*State Farm Fire & Casualty Co.* v. *Tashire,*
386 U. S. 523, 531 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 48

xi

*State Farm Mut. Auto. Ins. Co.*
*v. Narvaez*, 149 F.3d 1269 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Steel Co. v. Citizens for Better Environment,*
523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2D 210 (1998)       . . . . . . . . . . . .22

*Steiner v. Atochem,* 70
Fed.Appx. 599 (2d Cir. 2003)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Stoll v. Gottlieb*, 305 U.S. 165, 59
S. Ct. 134, 83 L. Ed. 104 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

*Strain v. Harrelson Rubber Co.,* 742
F.2d 888, 889 (5th Cir.1984)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

*Trevino v. Michelin North America, Inc.,*
Civil No. B-04-165 (S.D. Tex. Mar. 23, 2006) . . . . . . . . . . . . . . . . . . . . . . . 44

*Trout Point Lodge, Ltd. v. Handshoe,*
729 F.3d 481 (5th Cir. 2013)       . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Trout Point Lodge, Ltd. v. Handshoe, 2014 NSSC 62*       . . . . . . . . . . . . . . . .7

*TX DEPT. HOUSING & COMM.*
*AFFAIRS v. VEREX ASSUR.,*
68 F.3d 922 (5th Cir. 1995)       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Underwriters at Lloyd's, London v.*
*Osting-Schwinn,* 613 F.3d 1079 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Tittjung,*
*235 F.3d 330 (7th Cir. 2000)*       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

*Universal Communication Systems v.*
*Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . .48

*US v. Zimmerman,* No. 11-4604
(3d Cir. Aug. 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*USPPS, ltd. v. Avery Dennison Corp.,*
*647 F.3d 274 (5th Cir. 2011)* . . . . . . . . . . . . . . . . . . . . . . . . . .60

*Watts v. Pinckney, 752*
*F.2d 406 (9th Cir. 1985)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*White Pearl Inversiones SA v. Cemusa, Inc.,*
647 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Whitmire v. Victus Ltd.,* 212
F.3d 885 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*Williams v. First National Bank of St. Louis,*
No. 4: 14CV01458 ERW (E.D. Mo. Nov. 7, 2014) . . . . . . . . . . . . . . . . . . . . . . .18

*Wilmer v. Board of County Comm'rs of*
*Leavenworth County,* 69
F.3d 406 (10th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

*Wisconsin Dept. of Corrections v. Schacht,*
*524 U.S. 381, 118 S. Ct. 2047, 141 L. Ed. 2D 364 (1998)* . . . . . . . . . . .27

## STATUTES

17 U.S.C. § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

28 U.S.C. § 1653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 34, 35

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16

28 U.S.C. § 4101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13-14

28 U. S. C. § 1335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

28 U.S.C. § 4103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Fed.R.Ev. 201 and 801(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Fed.R.Civ.P 60(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36-61

## OTHER AUTHORITIES

Dodson, Scott. "Hybridizing Jurisdiction" (April 4, 2011).
*California Law Review*, Vol. 99, 2011;
William & Mary Law School Research Paper No. 09-94. . . . . . . . . . . . . . . . . . . .26

Folkman, Ted. "Recognition of foreign judgments
in defamation cases: the SPEECH Act"
Letters Blogatory (https://lettersblogatory.com/2011/04/07/recognition-of-foreign-judgments-in-defamation-cases-the-speech-act/). . . . . . . . . . . . . . . . . . . . . . . .15

Ludovici, Stephen E. *Rule 60(b)(4): When the
Courts of Limited Jurisdiction Yield to
Finality,* 66 Fla. L. Rev. 881, 905-07 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

Manzo, Nicole. "If You Don't Have Anything
Nice to Say, Say It Anyway: Libel Tourism
and the SPEECH Act,". *Roger Williams Law Review. 20 (1).* . . . . . . . . . . . . . . . .5

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT
### NO: 16-60508

**VAUGHN PERRET**
**and CHARLES LEARY**                                    **APPELLANTS**

**VERSUS**
**DOUG K. HANDSHOE**                                     **APPELLEE**

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

---

### BRIEF OF APPELLANTS
### VAUGHN PERRET AND CHARLES LEARY


### <u>JURISDICTION</u>

A.    This Court's jurisdiction arises under 28 U.S.C. 1291.

B.    The Appellants respectfully deny, however, that this Court has any subject-matter jurisdiction based on the district court's subject-matter jurisdiction, which is wanting.

C.    This Court will "review de novo a district court's conclusion as to whether a judgment is void for lack of personal jurisdiction under Rule 60(b)(4)" *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114 (5th Cir. 2008). The district court never had federal question jurisdiction pursuant to 28 U.S.C. § 4101 *et seq.*

1

(the SPEECH Act) as alleged in conclusory fashion by appellee because that Act of Congress required Article III minimal diversity of citizenship for jurisdiction to attach to the district court. Beyond the absence of allegations of citizenship, this case of first impression for the SPEECH Act of 2010 involves stateless United States citizen plaintiffs.

     B.     As this appeal concerns jurisdiction, other relevant jurisdictional statements appear below, with references to the Record on Appeal.

## STATEMENT OF ISSUES FOR REVIEW

1.   Absent any allegations of the citizenship of any party in the state court record and the Notice of Removal, did Appellee have Article III standing in this removed case?

2.   When minimal diversity of citizenship is required for removal, and there are no allegations whatsoever of the citizenship of any party, does subject-matter jurisdiction attach to the district court, and does the time of filing rule apply?

3.   Can subject-matter jurisdiction be cured, after the time of filing and the time of removal, by the district court finding the necessary jurisdictional facts in the merits record, but only *after* an unopposed motion to vacate?

4.   Did the district court apply the proper standard to these Rule 60(b)(4) motions?

5.   Did the district court impermissibly exercise its discretion in making its ruling on the motions to vacate?

6.   Is there any reasonable basis or arguable basis for subject-matter jurisdiction at the time of filing and the time of removal?

7.   Absent any allegations, can the citizenship of a party, when diversity is required, be "shown" in the record, after removal, without citations to where in

the record by the district court, and when the removing defendant has completely failed to rebut the presumption against federal jurisdiction?

8.    Given the strong presumption against federal jurisdiction in removed cases, what consequences does the Appellee's failure to oppose the motions to vacate have?

**STATEMENT OF THE CASE**

This was a case of first impression for the SPEECH Act of 2010 in which there was no discovery, the "foreign" plaintiffs were American citizens and their company, and the case proceeded by way of summary judgment. The merits case is summarized in *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013) and Nicole Manzo, "If You Don't Have Anything Nice to Say, Say It Anyway: Libel Tourism and the SPEECH Act,". *Roger Williams Law Review.* 20 (1). This appeal concerns subject-matter jurisdiction only. As "jurisdiction generally must precede merits in dispositional order" an in-depth review of the merits of the case in unnecessary here; *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999).

**Factual Summary**

Nova Scotia Supreme Court issued a final $427,000.00 (CAN) judgment for, *inter alia*, defamation, civil harassment, and injurious falsehood against Defendant/Appellee Doug Handshoe in February, 2012 (*Trout Point Lodge, Ltd. v. Handshoe, 2012 NSSC 245*) (ROA.21). Plaintiffs were two United States citizens domiciled in Canada and "members" of the "Nova Scotia limited company" Trout Point Lodge (hereafter "TPL"), which Appellant Leary represented in the Nova Scotia court *pro se;* (ROA.131).[1] Plaintiffs enrolled that money judgment in

---

[1] Appellant Perret graduated from law school in the United States but has not practiced law since the early 1990s.

Hancock County Circuit Court in March, 2012 (ROA.19). Defendant shortly thereafter removed the foreign judgment enforcement action from state court to the United States District Court citing 28 USC §1441 and solely an allegation of "federal question" jurisdiction under the SPEECH Act (ROA.14-16). There was no allegation of the citizenship of any party in the state court record; the caption stated Trout Point was a "Nova Scotia limited company" (ROA.19-26) Subsequently, the court did not engage in any adjudication or discussion of subject-matter jurisdiction. The case proceeded by way of cross motions for summary judgment, with no discovery, with the jurisdictional requirement for minimal diversity of citizenship having passed unnoticed by all involved. On December 19, 2012, the district court granted the Defendant's motion for summary judgment and denied the Plaintiffs' motion for summary judgment (ROA.1503). The Plaintiffs timely appealed to this Court, which denied the appeal in September, 2013; *TPL, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013), but did not address subject-matter jurisdiction. Jurisdiction seemingly returned to the district court, and in December, 2013, that court granted Defendant's motion for mandatory attorney's fees (ROA.1752).

On February 14, 2014, in an action filed by the same plaintiffs against the same defendant, Nova Scotia Supreme Court found defendant liable for copyright infringement under the *Copyright Act* of Canada, and issued an Order for money

6

damages (*Trout Point Lodge, Ltd. v. Handshoe, 2014 NSSC 62*). At the same time, the court issued an Order for defamation damages stemming from publications made since its previous judgment. In December, 2015, the Plaintiffs enrolled only the copyright infringement damages judgment in state court. Exactly as he had done in 2012, Appellee shortly thereafter removed that action to the same district court citing diversity jurisdiction and the SPEECH Act. The same judge presided. Plaintiffs sought remand. On February 16, 2016, based in part on lack of sufficient allegations of diversity, the district court issued Its Order Granting Plaintiffs' Motion to Remand in Case 1:16-cv-00007 (Document 8, Filed 02/16/16). Like the current case, that case involved the enforcement of a final Canadian judgment in state court. Like this case, that action was removed to this Court by Appellee citing 28 U.S. Code § 1441 and the SPEECH Act of 2010. All parties were and are exactly the same.

In May, 2016, Appellant Leary filed a *pro se* motion requesting extra pages to brief a motion under Federal Rule of Civil Procedure 60(b)(4) (ROA.1909); the district court denied the motion (ROA.12). On June 8, 2016, Appellants filed separate *pro se* motions under *Federal Rule of Civil Procedure* 60(b)(4) with the district court to vacate the 2012 and 2013 district court judgments as void for lack of subject-matter jurisdiction, arguing, *inter alia*, that threshold minimal diversity of citizenship was never established when the state court action was filed or when

the case was removed. Appellants argued, with some substantive differences, that Appellee had only made a conclusory allegation of federal question, and ignored the jurisdictional requirement of minimal diversity (ROA.1915 & ROA.1948).

The Appellee did not file any opposition to the motions to vacate.

On July 8, 2016, the district court denied both motions to vacate finding that during the merits phase of the summary judgment proceeding the record reflected that TPL was a "Canadian corporation" and that Defendant Handshoe was a "citizen of a state," thus accomplishing post-removal the threshold minimal diversity of citizenship required for subject-matter jurisdiction by the SPEECH Act and underlying it Article III of the Constitution (ROA.1973). However, in a 3-page decision the district court failed to cite where in the record the citizenship of the Appellee was established or when it was established; Appellant Leary's statement that TPL was a "Nova Scotia corporation" was in an affidavit filed months after the state court action was filed addressing the merits of the case, not subject-matter jurisdiction (ROA.1025). Perret & Leary timely filed a Notice of Appeal.

On August 4, 2016, after filing this appeal, Appellants were served with a 2nd Amended Complaint in the case Douglas Handshoe v. Vaughn Perret, Charles Leary, Daniel Abel, the National Geographic Society, Torstar Corporation, Progress Media, Marilyn Smulders, and the Ashoka Foundation (1:15-cv-00382-HSO-JCG) filed in the U.S. District Court for the Southern District of Mississippi

on June 17, 2016, nine days *after* the motions to vacate were filed.[2] In that complaint, Appellant named Leary and Perret each as "doing business as Trout Point Lodge Ltd."

## SUMMARY OF THE ARGUMENT

- This case addresses the absence of minimal diversity of citizenship necessary for federal jurisdiction in a removed case under the SPEECH Act, which, like the *Class Action Fairness Act* and the interpleader statute, bottoms on Art. III of the Constitution, i.e. "is a constitutional limitation on the federal judicial power established in Art. III;" *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

- The time of filing rule applies to this case, and also applies in determining the want of subject-matter jurisdiction in the context of a motion to vacate; *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004).

- There is no *res judicata* effect, or appeal to finality, in a Rule 60(b)(4) motion; Rule 60 expresses Congress' intent to provide an exception to finality, which has been repeatedly recognized by the Supreme Court.

_____

[2]This Court may properly take judicial notice of the caption and allegations made in a federal court lawsuit, not for their truth, but for their existence; Fed.R.Ev. 201. In addition, taking notice of pleadings in third party federal litigation in this Circuit is the law of the case, as the district court took judicial notice of the purported parties and allegations in a lawsuit removed to the U.S. District Court for the Eastern District of Louisiana in Its decision on summary judgment in this case.

- In a motion under Rule 60(b)(4) there is no time limit on when the motion can be brought; either a judgment is void or it is not. *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002).

- Likewise, the district court had no discretion in considering the motion under this rule, either there was a want of jurisdiction and the judgment is void, or jurisdiction existed and it is not.

- Appellee cannot and could not simply amend to make the required jurisdictional allegations; 28 U.S.C. § 1653 allows amendment to correct *faulty allegations*, and does not allow a removing party to create *new allegations* where none existed before; this legislation is consistent with the common law time of filing rule.

- This case always belonged in state court and should rightfully be remanded there.

This action was originally filed in Mississippi state court by two stateless United States citizens and their company (ROA.530), an artificial entity registered in the common law jurisdiction of Nova Scotia. Canada is a federation of provinces and territories, each with its own common law. The SPEECH Act required minimal diversity of citizenship consistent with Article III of the Constitution to effect removal of this case from state court to federal court. Like with the *Class Action Fairness Act* and the interpleader statute 28 U. S. C. § 1335, this

requirement for minimal diversity of citizenship is jurisdictional. No allegation of citizenship existed in the state court complaint. No allegation of citizenship whatsoever existed in the removal petition filed by Appellee, who merely cited "federal question" jurisdiction in a conclusory fashion without addressing the Act's required minimal diversity of citizenship (ROA.36).

No federal court ever implicitly adjudicated or frontally addressed subject-matter jurisdiction.

No change in the citizenship or jurisdictional lineup of a party occurred during the district court proceeding.

As a case of first impression under new legislation, the jurisdictional defect remained unnoticed until final judgment and through appeal.

In a second removed case in 2016 involving exactly the same parties and legislation, Appellee removed an action from the same state court to the same district court and judge, again citing federal question under the SPEECH Act *and* complete diversity jurisdiction. The parties were exactly the same. The district court remanded the case under 17 U.S.C. §1447(c), finding, in part "Defendant has failed to establish that the Court has diversity jurisdiction over this action. [. . .] "When a removing party fails to satisfy its initial burden of establishing complete diversity of citizenship, the Court 'cannot presume the existence of federal

jurisdiction.'" Ditcharo, 2015 WL 7078761, at *3 (quoting Howery 243 F.3d at 919)" Case 1:16-cv-00007-LG-RHW Document 8 Filed 02/16/16.

"In a Section 1447(c) remand, federal jurisdiction *never* existed" *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758 (5th Cir. 1994) (emphasis in original). The inconsistent application of the law to identical facts caused Appellants to review the jurisdictional facts of the instant case, and to file motions under Fed.R.Civ.P 60(b)(4) to vacate previous judgments as void for lack of subject-matter jurisdiction.

*Appellee did not oppose the motions*, waiving, or indeed again abandoning his continued burden to demonstrate that proper diversity jurisdiction existed. Appellee subsequently filed a *pro se* 2nd Amended Complaint in the same district court against Appellants, the National Geographic Society, the *Toronto Star* newspaper, Progress Media, a Nova Scotia journalist, and others in which he admitted that the Appellants "do business as" their company, but again without making any allegations of the citizenship of the parties (MS S.D. Case No. 1:15-cv-00382-HSO-JCG).

On July 8, 2016, the district court then denied the motions to vacate referring to the merits record, but not the original complaint or the removal petition, and without specific citations to where the merits record purportedly showed that minimal diversity of citizenship had been established by a preponderance of the

evidence during the summary adjudication in a case with no discovery. Specifically, the district court said that somewhere, at some point, and somehow the record showed that Appellee was the citizen of a state, and that an affidavit filed by Appellant Leary relating to the merits, and contradicted by other evidence, purportedly showed that TPL was a "Canadian corporation" and thus presumably in the view of the district court a citizen of a foreign state.

## ARGUMENT

## LACK OF ART. III MINIMAL DIVERSITY OF CITIZENSHIP UNDER THE SPEECH ACT.

Appellee removed the state court action against him pursuant to the "SPEECH Act" 28 U.S.C. § 4101, *et seq.* Generally, state law and the principle of comity governs the enforcement of judgments entered in a foreign nation. *Laskosky v. Laskosky,* 504 So.2d 726, 729 (Miss.1987); *Department of Human Services v. Shelnut,* 772 So. 2d 1041 (Miss. 2000). Appellee cited only "federal question" jurisdiction in the Notice of Removal (ROA.14). 28 U.S.C. § 4103, however, states:

> In addition to removal allowed under section 1441, any action brought in a State domestic court to enforce a foreign judgment for defamation in which —
>> (1) any plaintiff is a citizen of a State different from any defendant;
>> (2) any plaintiff is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>> (3) any plaintiff is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state,
> may be removed by any defendant to the district court of the United States for the district and division embracing the place where such action is pending without regard to the amount in controversy between the parties.

Neither the state court complaint nor the removal notice made any allegations of citizenship (ROA.19-26); nonetheless the district court accepted jurisdiction. The SPEECH Act requires Art. III minimal diversity of citizenship for removal from state court to federal court. In a removed SPEECH Act case, subject-matter jurisdiction bottoms on Art. III minimal diversity of citizenship, although

14

alternatively a case may be removed under 28 USC § 1441; cf. 28 USC § 4103;

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); see also

Ted Folkman, "Recognition of foreign judgments in defamation cases: the

S P E E C H          A c t "          L e t t e r s          B l o g a t o r y

(https://lettersblogatory.com/2011/04/07/recognition-of-foreign-judgments-in-

defamation-cases-the-speech-act/) ("removal jurisdiction in such cases extends

apparently to the limits of Article III.")

The requirement, which is not statutory but jurisdictional, is the same as in

the *Class Action Fairness Act* (CAFA) and the interpleader statute 28 U. S. C. §

1335, both of which require minimal diversity for the exercise of federal

jurisdiction; "CAFA expanded diversity *jurisdiction*" (emphasis added)

*Mississippi ex rel. Hood v. AU OPTRONICS*, 134 S. Ct. 736, 571 U.S., 187 L. Ed.

2D 654 (2014); cf. also *State Farm Fire & Casualty Co.* v. *Tashire,* 386 U. S. 523,

531 (1967); *Haynes v. Felder*, 239 F.2d 868 (5th Cir. 1957); *AU Optronics Corp.*

*v. South Carolina*, 699 F.3d 385 (4th Cir. 2012).

There was no change in the jurisdictional status of any of the parties during

the district court or appellate proceedings, and Appellee never had standing to

remove the case from its rightful place in state court. Removal under 28 U.S.C. §

1441 was impossible because Appellees are stateless United States citizens and the

sole basis for removal was purported "federal question" under the SPEECH Act.

Appellants argue that (a) subject-matter jurisdiction is a threshold requirement that *must* be shown in the state court record and in the removal petition or otherwise jurisdiction *never attaches* to the district court. That threshold jurisdictional requirement was never even close to being met in this case, meaning the district court never had subject-matter jurisdiction, which remained with the state court. There was no reasonable basis or arguable basis for accepting jurisdiction. (B) The district court erred in finding that subject-matter jurisdiction was cured during the merits phase, in a three-page decision that amounts to a re-establishment of the test once fashioned by this Court that the Supreme Court flatly rejected in *Grupo Dataflux, supra* (though even more egregiously here as the issue in this case is threshold Art. III minimal diversity of citizenship, an issue pressed by the *Dataflux* dissent).[3] In addition, there was not a faulty allegation of citizenship in this case; there was *no* allegation, a condition this Court has repeatedly recognized as irreparably depriving a federal court of jurisdiction based on diversity. (C) Finally, nothing in the record rebutted the "strong presumption"

---

[3]*Dataflux* was a 5-4 decision. The majority affirmed the time of filing rule as a threshold element and as jurisdictional; the dissent *agreed* as long as there was no change in parties during the proceeding. The dissent recognized that in *Dataflux* "diversity of citizenship was *incomplete* among the adverse parties" at the time of filing (at 582) (emphasis added). The dissent believed only "postfiling party lineup alterations that *perfect* previously defective *statutory* subject-matter jurisdiction" might be possible and held fast "categorically" to the "long applied Marshall's time-of-filing rule." In the instant case, there was no "party lineup alteration" whatsoever. The dissent emphasized "this case, in common with *Caterpillar* and *Newman-Green,* met the constitutional requirement of minimal diversity at the onset of the litigation." This too distinguishes the instant case, where it is incontrovertible that "at the onset of the litigation" *constitutional* minimal diversity was neither alleged nor established. Thus both the majority and the dissent in the Dataflux court would have found a *jurisdictional* fault with the instant case.

that "a cause lies outside this limited [federal] jurisdiction" in removed cases, and none of the parties can waive or consent to threshold subject-matter jurisdiction. _Kokkonen v. Guardian Life Ins. Co. of Am._, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); _St. Paul Mercury Indem Co. v. Red Cab Co._, 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). (1) Appellee never met his threshold burden to rebut that strong presumption; (2) when it became incumbent on Appellee to do so in responding to the motions to vacate, Appellee filed no response, thus failing to meet his burden and waiving his right to challenge the fact that there is no subject-matter jurisdiction here. (3) It remains to this day unestablished that Appellee is a "citizen of a state" and that Trout Point is not what under the law of federal jurisdiction it must be presumed to be: an artificial entity other than what the law would recognize as a company being made up of the citizenship of its stateless members. Appellee admitted in federal court filings, after the motions to vacate were filed, that Perret and Leary "do business as" TPL; this Court may take judicial notice of such pleadings and the resulting admission that Appellants are not separate entities from TPL. Cf. Fed.R.Ev. 201 and 801(d) (2). Appellee admits TPL is an unincorporated common law entity, with Leary and Perret both "doing business" as Trout Point and therefore minimal diversity of citizenship never existed. Again, Appellee made these assertions _after_ being on notice of the motions to vacate due to a lack of minimal diversity.

This Court must take a party's failure to address jurisdiction when presented with notice as significant: i.e. "[w]here as here there is no indication in the record that diversity in all probability exists," and the party whose burden it is "has shown [. . .] no inclination to cure the jurisdictional defect even though on notice of the defect" *McGovern v. American Airlines, Inc.*, 511 F.2d 653 (5th Cir. 1975).

> [W]e were called upon to review the district court's *dismissal* for lack of jurisdiction on the basis of no diversity. We affirmed holding that "[t]he paucity of appellants' presentation of evidence justifies the district court's conclusion that they had not met [their] burden." *Id.* This is consistent with the notion that federal courts are courts of limited jurisdiction and the corollary presumption against diversity jurisdiction. 1 *Moore's Federal Practice,* ¶ 0.71[5] at 735. Here, in contrast, we are reviewing a district court's finding that diversity exists. Consistent with the presumption against diversity jurisdiction, we are less willing to affirm a court's finding that diversity exists where, as here, the jurisdictional facts supporting the existence of diversity are so exceedingly sparse.

*Bank One, Texas, NA v. Montle*, 964 F.2d 48 (1st Cir. 1992).

The post-removal statement that TPL was a "Nova Scotia corporation" under Nova Scotia law in July, 2012 (ROA.1025), did not establish by a preponderance of the evidence that minimal diversity of citizenship existed when the case was filed or removed months earlier. The district court ignored that the Supreme Court has consistently espoused the rule that *every* association of a common-law jurisdiction other than a corporation is to be treated like a partnership for purposes of diversity of citizenship.

The Supreme Court has repeatedly said Rule 60(b)(4) allows for an exception to finality without articulating a standard of review for such motions.

The district court argued, seemingly on behalf of Appellee, that the absence of subject-matter jurisdiction had to be "egregious" in the Rule 60(b)(4) context. However, the non-removed 60(b)(4) case relied on by the district court, *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204 (5th Cir. 2003), is inapposite here because in that case, while the argument was that jurisdiction was lacking, that argument was *not* based on a lack of diversity jurisdiction. "[T]he district court clearly had diversity jurisdiction over the litigation" *Callon, supra*. This diversity provided an arguable and reasonable basis for subject-matter jurisdiction in that case. The same cannot be said for the instant case. The alleged lack of jurisdiction in *Callon* was based on an argument about "insurance regulation" that has nothing to do with the case here. The district court had no discretion in this case in its decision on the motions to vacate: either subject matter jurisdiction existed at the point required under the federal common law of jurisdiction and the Constitution or it did not.

Appellants argue that the lack of subject-matter jurisdiction in this case, combined with the ever-present strong presumption against federal jurisdiction in removed cases, and the incontrovertible failure of the Appellee to bear his burden, mean that there was a lack of jurisdiction from the start, and that this fact in and of itself is "egregious," being a usurpation of the state court's power expressed in *Laskosky* and *Shellnut, supra*. For that reason the judgments of the federal courts

are void and this case should be immediately remanded to the district court with instructions to remand to state court.

### Lack of Standing Based on Total Absence of Diversity Allegations

Art. III standing at the time of removal depends on allegations of diversity of citizenship. "Failure to make proper and complete allegations of diversity jurisdiction relegates a litigant to the jurisdictional purgatory described by Chief Justice Hughes in <u>McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1935)</u>" and as a result of such a failure in diversity allegations "the district court did not have jurisdiction." *Fifty Associates v. Prudential Insurance Co. of America*, 446 F.2d 1187 (9th Cir. 1970); *Prasad v. OCWEN LOAN SERVICING, LLC*, No. 2: 15-cv-0555 KJM GGH PS (E.D. Cal. Aug. 5, 2015).

Absent adequate allegations of minimal diversity, jurisdiction rests with the state court, and "[j]urisdiction purporting to be premised on the presence of a federal question attaches only if the complaint itself states" the necessary facts; otherwise "removal jurisdiction never attached in the district court"; *Maroney v. University Interscholastic League*, 764 F.2d 403 (5th Cir. 1985). By moving to the merits, a federal court is impermissibly usurping the jurisdiction of the state court over enforcement of a foreign judgment under state law.

> Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the

Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect. *American Fire & Casualty v. Finn, supra; In Re Carter, supra.*
B., INC. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981)

See also *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir. 1991); *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012). "`[T]he rule ... is inflexible and without exception, which requires [a] court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.'"*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).*

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (internal citations removed)

In a removed case requiring diversity of citizenship, a federal court cannot exercise "hypothetical jurisdiction" hoping that diversity jurisdiction will become apparent during the merits phase of litigation:

We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. [. . .] The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L. M. R. Co.* v. *Swan, 111 U. S. 379, 382 (1884).*" "This Court's insistence that proper jurisdiction *appear* begins at

21

least as early as 1804, when we set aside a judgment for the defendant at the instance of the losing plaintiff *who had himself* failed to allege the basis for federal jurisdiction. *Capron* v. *Van Noorden*, 2 Cranch 126 (1804)" (emphasis added).

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2D 210 (1998).

In applying *Capron, supra,* the Court in *Steel Co.* emphasized the critical importance of threshold jurisdictional allegations, which is vital to subject-matter jurisdiction in removed cases. The actual existence of diversity of citizenship in *Capron* was completely unclear at the time of filing, as in the instant case. Precisely as here, the problem was that the party responsible for asserting federal jurisdiction failed to allege diversity of citizenship, and, also as in the instant case, the lower court never addressed citizenship. Like this Court in *Getty Oil, Div. Of Texaco v. Ins. Co. of North Am.*, 841 F.2d 1254 (5th Cir. 1988), the Capron Court did not care or address the quandary of whether diversity of citizenship really existed. Instead, the Court's rule-- reaffirmed in *Steel Co., supra*--was that federal trial courts lack subject-matter jurisdiction "unless the record [at the time of filing] shews that the parties are citizens of different states." "[D]etermination of" jurisdictional "status for purposes of removal jurisdiction depends on" the facts "at the time the action was commenced and removed"; *TX DEPT. HOUSING & COMM. AFFAIRS v. VEREX ASSUR.*, 68 F.3d 922 (5th Cir. 1995) citing *Jackson v. Allen*, 132 U.S. 27, 10 S.Ct. 9, 33 L.Ed. 249 (1889). Consistent with *Steel Co*

and *Capron,* in *Jackson v. Allen, supra,* the Supreme Court addressed a case

removed from state court. The Court reversed the lower court judgment, stating:

> It appears from the record that the citizenship of the parties at the commencement of the actions, as well as at the time the petitions for removal were filed, was *not sufficiently shown,* and that therefore *the jurisdiction of the state court was never divested. Stevens* v. *Nichols,* 130 U.S. 230. (emphasis added)

## Rigorous Enforcement of Jurisdictional Limits

Recently, this Court has noted the Supreme "Court's more recent push to

rigorously enforce jurisdictional limits and their "drastic" consequences."

> *See, e.g., Henderson ex rel. Henderson v. Shinseki,* ___ U.S. ___, 131 S.Ct. 1197, 1202-03, 179 L.Ed.2d 159 (2011) (collecting cases); Steel Co. *v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (rejecting doctrine of "hypothetical jurisdiction" because "it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"); *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 76-77, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("Despite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated."); *see also* Alligator Co. *v. La Chemise Lacoste,* 421 U.S. 937, 938, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975) (White, J., with Blackmun and Powell, JJ., dissenting from denial of certiorari) (arguing that "jurisdictional questions should be reviewed at the first available opportunity," because "[h]ad that course been followed here, ... days of trial and a decision on the merits would not have been wasted"); *cf.* Scott Dodson, *The Complexity of Jurisdictional Clarity,* 97 VA. L.REV. 1, 2-3 (2011).

*In re Crystal Power Co., Ltd.,* 641 F.3d 82 (5th Cir. 2011).

This strong tendency in Supreme Court jurisprudence should be taken into account in a Rule 60(b)(4) motion based on a lack of subject-matter jurisdiction based on minimal diversity of citizenship.

A case from this Court possessing nearly identical facts to the instant case is compelling, if not binding, on the issue of whether or not there was a reasonable basis for subject-matter jurisdiction in this case. *Getty Oil* was a *removed case* in which the sole basis for federal jurisdiction was "diversity of citizenship." However, there existed serious defects in the allegations of the citizenship of the parties, including (as here) that "the defendants-appellees have not sufficiently alleged the citizenship" of a foreign company. The Getty court affirmed that "when the alleged basis for jurisdiction is diversity of citizenship, the district court *must* be certain that the parties are in fact diverse *before* proceeding to the merits of the case" (emphasis added).

There was a remand motion filed in *Getty*; however due to continuances that motion was never heard before final judgment. Here no remand motion exists, however it always remained the case that "[t]he burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction. In the present case, the burden was upon the defendants-appellees, who sought to remove the case from state to federal court" (citation removed). In the instant case, Handshoe has done *nothing whatsoever*, even when challenged to

24

do so, to bear his burden of alleging and proving adequate diversity jurisdiction, either in the district court proceeding or on receiving notice of the vacation motions.

> We have stated repeatedly that when jurisdiction depends on citizenship, citizenship must be "*distinctly* and *affirmatively* alleged." *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n. 2 (5th Cir.1983) (the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference). In cases involving corporations, allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation.These rules are straightforward, and the law demands strict adherence to them. Nonetheless, it seems that we are again constrained to emphasize the importance of clear, distinct, and precise affirmative jurisdictional allegations.

*Getty* (internal citations omitted)

Relevant to the instant case, the *Getty* court concluded: "Since the district court did not *even mention jurisdiction* before entering a final judgment, we cannot assume that it made such a determination, nor can we affirm its judgment" (emphasis added).

> [B]y failing to adequately allege the citizenship of [plaintiff company] or its individual members, the defendants-appellees have not clearly established that there is complete diversity. Since the district court did not address these jurisdictional issues, we have no way of determining whether the parties are in fact diverse. Indeed, we have no way of knowing whether the district court actually determined that it had diversity jurisdiction. Under these circumstances, we are compelled to vacate the judgment below . . .

The district court not addressing subject-matter jurisdiction is the same in both *Getty* and the instant case. Since the district court did not address minimal diversity, there is no way to determine whether the parties are in fact diverse;

Handshoe never alleged anything remotely resembling minimal diversity. And if

the findings of *Getty* remain true, there can be no finding that the district court

"implicitly" determined its own jurisdiction.

### Time of Filing Rule Applies

The time of invocation of federal jurisdiction is critical to the jurisdictional

analysis in removed cases, including in removal based on minimal diversity:

> [F]or purposes of removal jurisdiction, we are to look at the case as of the
> time it was filed in state court—prior to the time the defendants filed their
> answer in federal court. See, e. g., St. Paul Mercury Indemnity Co. v. Red
> Cab Co., 303 U. S. 283, 291 (1938) ("[T]he status of the case as disclosed by
> the plaintiff's complaint is controlling in the case of a removal, since the
> defendant must file his petition before the time for answer or forever lose his
> right to remove"). As of that time, a case that involved "incomplete
> diversity" automatically would have fallen outside the federal courts'
> "original jurisdiction."

Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 118 S. Ct. 2047, 141 L.
Ed. 2D 364 (1998); also *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 568
U.S., 185 L. Ed. 2D 439 (2013).

"[T]he Court has never approved a deviation from the rule articulated by

Chief Justice Marshall in 1829 that "[w]here there is *n o* change of party, a

jurisdiction depending on the condition of the party is governed by that condition,

as it was at the commencement of the suit." *Conolly,* 2 Pet., at 565 (emphasis

added)" *Grupo Dataflux, supra.*

> The traditional conceptualization of jurisdiction is that it must be established
> at the time a party invokes the federal forum. This time-of-invocation rule is
> consistent with the "power" theory of jurisdiction: if a court lacks
> jurisdiction, it has no authority to do anything other than dismiss.

Dodson, Scott, "Hybridizing Jurisdiction" (April 4, 2011). *California Law Review*, Vol. 99, 2011; William & Mary Law School Research Paper No. 09-94.

In a removed case, jurisdiction depends on the existence of allegations of minimal diversity of citizenship in the removal documents or the state court record; cf. *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001). Burden always rests on the party asserting federal jurisdiction; cf. *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986) citing *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir.1966). In a removed case, allegations of citizenship (and in usual cases jurisdictional amount) are necessary for subject-matter jurisdiction to attach to, or vest in the federal court. For example: *University Interscholastic League, supra*; *Sellers v. O'CONNELL*, 701 F.2d 575 (6th Cir. 1983) ("jurisdiction never attached" when facts at the time of filing failed to demonstrate subject-matter jurisdiction); *Moss v. Voyager Ins. Companies*, 43 F. Supp. 2d 1298 (M.D. Ala. 1999) ("the court finds that federal court jurisdiction never attached to the instant case" when at the time of filing the jurisdictional amount was not met); *Brewer v. United Parcel Service, Inc.*, Case Number CIV-04-1150-C (W.D. Okla. Dec. 2, 2005) ("The Court finds that UPS has failed to shoulder the burden of affirmatively establishing that the jurisdictional amount was in controversy at the time Brewer filed his petition. Therefore, diversity jurisdiction never attached to the removed action and the Court is without subject matter jurisdiction to adjudicate this

action"); *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269 (10th Cir. 1998) ("subject matter jurisdiction never actually existed over the present action.")

Thus the Supreme Court rejected the jurisdictional test formulated by the Fifth Circuit in *Grupo Dataflux* recited below:

> (1) [A]n action is filed *or removed* when constitutional and/or statutory jurisdictional requirements are not met, (2) neither the parties nor the judge raise the error until after a jury verdict has been rendered, or a dispositive ruling has been made by the court, and (3) before the verdict is rendered, or ruling is issued, the jurisdictional defect is cured (emphasis added).

In rejecting this test, the Supreme Court found that the *only* exceptions to the "time of filing rule" have been cases where "the dismissal of the party that had destroyed diversity" cured the jurisdictional defect before final judgment. *Grupo Dataflux* affirmed the "time of filing rule" that ""the jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan v. Torrance, 9 Wheat. 537, 539 (1824)*" both in removed and non-removed cases. *Dataflux* emphasized that the *only* exceptions to that rule have been cases where "the dismissal of the party that had destroyed diversity" cured the jurisdictional defect before final judgment.[4] The district court ignored this case.

---

[4] Looking back, this is born out in the case law. In *Caterpillar* the jurisdictional defect was "overcome by the eventual dismissal of the nondiverse defendant." In *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U. S. 826 (1989), the federal courts had the power to dismiss "a dispensable nondiverse party" to cure the jurisdictional defect. And in *Grubbs v. General Elec. Credit Corp.,* 405 U. S. 699 (1972), at the time of filing in state court, it was clear "[t]here was [. . .] diversity jurisdiction in the Federal District Court under 28 U. S. C. § 1332 if the action had been brought in that court originally." The same was true in *Callon, supra,* the Fed.R.Civ.P 60(b) (4) case relied on by the district court. In each of these cases either a change of parties cured the jurisdictional fault, or the case would have been amenable to diversity jurisdiction at the time of filing because the necessary allegations of diversity existed at that time. In each case the alleged

## Total Absence of Allegations of Citizenship

Handshoe never alleged his own citizenship or domicile. "[A] removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a)"; *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

> [T]he defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally.

*Lowery, supra.*

"It is established that an allegation of residency does not satisfy the requirement of an allegation of citizenship"; <u>*Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984) (per curiam)</u>. Handshoe actually made no allegations of citizenship, residency, or domicile whatsoever regarding any party in his removal documents. "To be a citizen of a state, a natural person must first be a citizen of the United States. <u>*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)</u>. The natural person's state citizenship is then determined by her state of domicile, not her state of residence"; *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state" (*Kanter, supra*).

---

facts necessary to make that decision existed in the record. That distinguishes the instant case; there were no jurisdictional facts alleged to vest jurisdiction in the district court in the first place —merely a conclusory (and incorrect) allegation of "federal question."

For a company, an allegation citizenship is determined by answering the question whether the entity is a corporation for citizenship purposes, or some other common-law entity; cf. *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2D 157 (1990). For a corporation, including a foreign corporation, the removing party must allege and establish the state of incorporation and the primary place of business. It is of no importance to the citizenship analysis "with reference to specific States' laws" what corporate powers or labels, such as "corporation" or "trust" a state may give to an "inanimate creature of state law"; the court must inquire into the true nature of the entity using the common law of federal jurisdiction, be it corporation or otherwise; *Americold Realty Trust v. Conagra Foods, Inc.*, 2016 W.L. 854159 (U.S. 2016); *Chapman* v. *Barney,* 129 U. S. 677 (1889). Federal common law, not the law of any state, determines whether a person is a citizen of a particular state (including a foreign state) for purposes of such jurisdiction. *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

For *any* other common law entity, including a Nova Scotia limited company created under the *Act Respecting Joint Stock Companies (In re Smurfit-Stone Container Corp.,* 444 B.R. 111 (Bankr. D. Del. 2011)) the allegations must describe the citizenship of each equity member; cf. *Howery, supra; Arkoma, supra; Americold Realty Trust, supra.*

[T]he Court in *Carden* provided "a general rule: *every* association of a common-law jurisdiction other than a corporation is to be treated like a partnership." *Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 317 (7th Cir.1998) (emphasis in original) (citing *Carden,* 494 U.S. at 190, 110 S.Ct. 1015). That rule applies without regard to the corporation-like features or other business realities of the artificial entity."

*Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079 (11th Cir. 2010).

See also *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008). If "the citizenship of [an] unincorporated association *may* [. . .] destroy diversity" then the federal court never had "*jurisdiction* from the inception of this lawsuit" and "state court would be the appropriate forum for the parties to resolve their dispute"; *Arena*, 5th Circuit, *supra*.

For persons, the allegation must be that they are the citizen of a state or a citizen or subject of a foreign state, and as recognized by the district court in its decision on the motions to vacate, United States citizens domiciled in a foreign county are not citizens of a state or subjects of a foreign state for purposes of diversity; cf. *Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996). "An American national, living abroad, cannot sue or be sued in federal court under diversity jurisdiction [...] if [the American national] was found to be domiciled abroad, he would not be a citizen of any state and diversity of citizenship would also fail." "For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized." "Moreover, an American living abroad is not by virtue of that

domicile a citizen or subject of the foreign state in which he resides . . ." *Coury, supra.*

The essential analysis as to whether a company is a corporation for citizenship purposes applies equally to foreign companies; cf. *Jerguson v. Blue Dot Inv., Inc.*, 659 F.2d 31 (5th Cir. 1981); *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 122 S. Ct. 2054, 153 L. Ed. 2D 95 (2002). For foreign companies other than corporations, the removing defendant must allege the citizenship of the members of the company or there is no jurisdiction; the fact that the company is a juridical entity under foreign law is immaterial; cf. <u>*Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co., 759 F. 3d 787, 788 (7th Cir. 2014) (Easterbrook, J.)*</u>. "[I]t can be difficult to decide whether a business bearing the suffix "Ltd." is a corporation for the purpose of § 1332 or is more like a limited partnership, limited liability company, or business trust"; *White Pearl Inversiones SA v. Cemusa, Inc.*, 647 F.3d 684 (7th Cir. 2011); also *KESHOCK v. METABOWERKE GmbH*, Civil Action No. 15-00345-N (S.D. Ala. July 20, 2015). An allegation of a party being a "Canada limited company" is insufficient for jurisdictional purposes; cf. HEAT OILFIELD RENTALS, LTD. v. VULCAN OILFIELD SERVICES, LLC, Dist. Court, WD Pennsylvania, No. 2:15-cv-332, (March 12, 2015).

This Court allows parties to cure technical defects or failure to specifically allege the citizenship of a party, but only when the amendment made *before* final judgment would do nothing more than state an alternative jurisdictional basis for recovery *upon the facts previously alleged.* Otherwise, the judgment is void and must be vacated; *Howery, supra.* 28 U.S.C. § 1653.

> The danger against which a court must guard is that a party will attempt, to use § 1653 to retroactively create subject matter jurisdiction. *See* MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.14[3], at 15-34 (3d ed. 1999) ("Essentially, a plaintiff may correct the complaint to show that jurisdiction does in fact exist; however, if there is no federal jurisdiction, it may not be created by amendment."). The cause for this concern is readily apparent: "never having had power to act in the matter, the court never had authority to permit an amendment to the complaint." *Falise,* 241 B.R. At 66.

*Whitmire v. Victus Ltd.*, 212 F.3d 885 (5th Cir. 2000).

Also Falise v. American Tobacco Co., 241 BR 63 (E.D.N.Y. 1999), collecting cases. *Russell v. Basila Mfg. Co.*, 246 F.2d 432 (5th Cir. 1957) ("Clearly this was the act of a Court having no jurisdiction." When jurisdictional obstacle "was eliminated only by virtue of the adjudication by the Court presuming to have jurisdiction, i. e., power to act, not then existing," that cure is "ineffective to remove the obstacle.") Nothing in Rule 60 would allow a conflict with 28 U.S.C. § 1653, and neither it nor Rule 60, the "arguable basis" standard, or any other standard allows a court to "provide a remedy for defective jurisdiction itself." *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983).

In a removed case, the parties cannot waive threshold subject-matter jurisdiction like minimal diversity; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2D 1097 (2006). The fact that a party did not bring the matter of diversity to the attention of a Court of Appeal on appeal is immaterial to a judgment being void for lack of subject-matter jurisdiction; cf. *Mitchell v. Maurer*, 293 U.S. 237, 243-44, 55 S.Ct. 162, 79 L.Ed. 338 (1934).

## FED.R.CIV.P 60(B)(4)

### Standard to Apply

Under Rule 60(b)(4) a judgment is "void" if the court that rendered it lacked jurisdiction of the subject matter; *Brumfield v. Louisiana State Board of Education*, No. 14-31010 (5th Cir. Nov. 10, 2015). This Court's case law on Rule 60(b)(4) is "nuanced," not "limited," and any case being applied must be "similar to the instant case factually, temporally, or legally." *Brumfield, supra*. Case law clearly states that a federal court has no discretion to deny a motion for relief from a judgment unsupported by subject matter jurisdiction. See, e.g., Carter v. Fenner, 136 F.3d 1000, 1005 (5th Cir. 1998), cert. denied, 525 U.S. 1041 (1998); Jordon v. Gilligan, 500 F.2d 701, 704 (6th Cir. 1974), cert. denied, 421 U.S. 991 (1974) ("A void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside.").

Rule 60(b)(4) "requires a consideration of competing interests rather than a formula." *Matter of Edwards*, 962 F.2d 641 (7th Cir. 1992), Posner, J.

> The Seventh Circuit has explained that when the motion is pursuant to Rule60(b)(4) [. . .] the review is plenary and courts have little leeway as it is a *per se* abuse of discretion for a district court to deny a motion to vacate a void judgment. A judgment is void for purposes of Rule 60(b)(4) if the court that rendered it entered an order outside its legal powers. The Ninth Circuit's approach is also instructive: "We review de novo .... a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one."

*Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998) (internal citations removed)

Whether there was a remand motion in the district court is irrelevant to determining threshold subject-matter jurisdiction; *State Farm*, *supra*; *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001).

> Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. *House v. Secretary of Health and Human Services*, 688 F.2d 7, 9 (2d Cir.1982); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981). In other words it should be broadly construed to do "substantial justice," see *Seven Elves*, 635 F.2d at 401, yet final judgments should not "be lightly reopened." *Id.*; Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1984).

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986).

### Finality

The party filing a 60(b)(4) motion relating to subject-matter jurisdiction may face a high hurdle based on a small subset of Supreme Court cases that did not directly address Rule 60(b)(4). Such case law holds that a court always has "jurisdiction to determine its own jurisdiction," and appeals to *res judicata* principles. For example, this Court has found that many other circuits have

"extended the principles of *Chicot County* to the analogous context of Rule 60(b) (4) motions." *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990). *Chicot County*, however, was not a 60(b)(4) case. "[T]he Supreme Court's most recent pronouncement concerning this rule did not mention these criteria. *United Student Aid Funds*, supra. Instead, the Court stated:

> Although the term 'void' describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. . . . The list of such infirmities is exceedingly short, otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule.

> *Id.*"

*Brumfield, supra.*

The *res judicata* proposition of this line of cases is: if the question of subject matter jurisdiction was actually litigated before the judgment court and the court determined that it possessed jurisdiction, then that determination is binding on all future courts, even if the determination was erroneous. Some courts have asserted that the judgment court's finding of jurisdiction is binding when "implicitly" decided. See *Stoll v. Gottlieb*, 305 U.S. 165, 59 S. Ct. 134, 83 L. Ed. 104 (1938); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371 (1940); United States v. Tittjung, 235 F.3d 330 (7th Cir. 2000), cert. denied, 533 U.S. 931 (2000). As stated by the U.S. Court of Appeals for the Tenth Circuit:

> A court does not usurp its power when it erroneously exercises jurisdiction. *Kansas City Southern*, 624 F.2d at 825. "Since federal courts have 'jurisdiction to determine jurisdiction,' that is, 'power to interpret the

language of the jurisdictional instrument and its application to an issue by
the court,' error in interpreting a statutory grant of jurisdiction is not
equivalent to acting with total want of jurisdiction." *Id.* (quoting *Stoll v.
Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).
*Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342 (10th Cir. 2000).

Viewed from the perspective of the accepted case law's absolute statements

regarding the presence or absence of federal jurisdiction in removed cases, this

exception seems to allow a federal court to create its own power by simply finding

—erroneously and after the time of filing--that it already possessed the power,

much as the district court did here in its decision denying the 60(b)(4) motions.

Other courts, however, have declined to follow the *res judicata* principle

when applied to a Rule 60(b)(4) motion, finding that finality does not apply to

these cases. Indeed a line of cases has emphasized that *Stoll*, *Chicot County* and

their *res judicata* progeny do not reach the 60(b)(4) context. Notably, in both *Stoll*

and *Chicot* the Supreme Court ultimately decided that the courts below had

jurisdiction over the general subject-matter. The lower courts' orders might have

been erroneous in their decisions on jurisdiction, but there was no constitutional or

statutory bar at work depriving them of jurisdiction; that is not so in the instant

case, which bottoms on Art. III minimal diversity of citizenship. "[T]he doctrine of

"res judicata does not preclude a litigant from making a direct attack [under Rule

60(b)] upon the judgment before the court which rendered it." 1B J. Moore,

Federal Practice, ¶ 0.407, at 931 (2d ed. 1973)" *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir. 1974).

This Court weighed principles of finality and *res judicata* against the constitutional values of Rule 60 (on the issue of personal jurisdiction) and found (footnotes removed):

> [W]e judge that — at least given the conflict here between the federal rules governing jurisdiction on the one hand and *res judicata* on the other — in this case, the protections of personal jurisdiction must trump the doctrine of claim preclusion. This result rests on at least two justifications.

> First, "[r]es judicata is very much a common law subject."A judicially-derived principle of preclusion generally must perforce yield to the contrary command of a formal rule such as Rule 60(b)(4).

> Second, the *res judicata* doctrine protects private and public values — such as repose, finality, and efficiency — that are important, but have not yet found much expression as constitutional principles, at least in the civil context. It appears that the Supreme Court has only once adverted, and then obliquely, to the possibility that due process might prevent the relitigation of matters already decided.—We ourselves do not appear ever to have contemplated this possibility. Whatever due-process theory might require, current due-process doctrine concerns itself only minimally, if at all, with preserving any property right that the Jacksons may have acquired through their default judgment. Due-process doctrine is far more concerned with protecting the ability of a party like Fratelli Tanfoglio to contest a rendering court's power to bind it to a judgment in the first place.

> The fact that one of the principles in tension here is a development of the jurisprudence, and the other is a constitutional value, may partly be a matter of historical contingency rather than logic or principled theory. But that is nonetheless the state of the law, and we must apply it as we find it.

*Jackson v. FIE Corp. supra*

Given that the instant case involves Art. III minimal diversity of citizenship, the

FIE Court's pronouncement about "constitutional principles" are applicable here.

The 9th Circuit Court of Appeal in *Watts v. Pinckney*, 752 F.2d 406 (9th Cir.

1985) stated:

> The Watts also argue that the doctrine of *res judicata* precludes a collateral attack upon a court's determination of its own jurisdiction. In support of this proposition, the Watts cite *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) and *Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645 (1st Cir. 1972). While it is true that these cases provide that *res judicata* bars a collateral attack on a final judgment, the Watts' reliance on these decisions is misplaced.
>
> Pinckney's attack on the judgment was *direct*, not collateral. A direct attack is defined as follows:
>
>> A direct attack on a judicial proceeding is an attempt to correct it, or to void it, in some manner provided by law to accomplish that object. It is an attack ... by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated or declared void.
>
> 1B J. Moore, *Moore's Federal Practice* ¶ 0.407 at 282 n. 1, *quoting Intermill v. Nash*, 94 Utah 271, 75 P.2d 157.
>
> The doctrine of res judicata does not apply to *direct* attacks on judgments. "Res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it." *Jordan v. Gilligan*, 500 F.2d at 710, *quoting* 1B J. Moore, *Moore's Federal Practice* ¶ 0.407 at 931 (2d ed. 1973).

Applying Rule 60, the 9th Circuit Court of Appeal has also stated:

> Appellant cites authority for the proposition that a court's determination regarding jurisdiction over the subject matter is final, *res judicata*, and not subject to collateral attack. Cf. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. The cited cases represent good law, but they have nothing to do with a court's power under Rule 60 to vacate or set aside a judgment.

*Resnik v. La Paz Guest Ranch*, 289 F.2d 814 (9th Cir. 1961).

Notably statements from *Picco, supra*, appear to contradict *Jackson v. FIE* regarding finality. In the earlier case of *Picco*, this Court approved of the application of Chicot's *res judicata* principles to 60(b)(4) motions, but with numerous caveats. First, the issue was a bankruptcy stay, not subject-matter jurisdiction in a removed case. Second, the Court found that the district court "implicitly concluded that its dismissal was consistent with [the bankruptcy stay's] terms" and can "enter orders not inconsistent with the terms of the stay." Third, the Court explicitly found: "This is not a case in which there is a "clear usurpation of power" or "total want of jurisdiction" that might make Rule 60(b)(4) relief an appropriate avenue for challenge to the district court's *determination* of jurisdiction" (emphasis added). In the instant case, there simply was no "determination of jurisdiction," and the issue is subject-matter jurisdiction, making the Picco court's use of *res judicata* inapplicable here.

### Reasonable Basis Standard

The Supreme Court has refused to comment on or apply the "arguable basis" standard used by some circuits in Rule 60(b)(4) cases: "This case presents no occasion to engage in such an "arguable basis" inquiry or to define the precise circumstances in which a jurisdictional error will render a judgment void . . ." *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 559 U.S. 260, 176 L. Ed. 2d 158 (2010), citing *Nemaizer v. Baker, supra*. In *Brumfield* supra, this Court

found that the Supreme Court in *Espinosa* intentionally "has not definitively interpreted" the "arguable basis" rule used by some circuits in 60(b)(4) cases and did not apply it in *Brumfield*. In *Box v. DALLAS MEXICAN CONSULATE GENERAL*, No. 14-10744 & 14-10953 (5th Cir. Aug. 19, 2015), regarding the "arguable basis" standard, this Court intentionally expressed "no opinion as to the proper standard of review" for a district court in a 60(b)(4) case. Like the district court here, other courts have noted that the case must be "exceptional" and/or "egregious" for a 60(b)(4) motion to survive. *United States v. Tittjung, supra* ("Only when the jurisdictional error is `egregious' will courts treat the judgment as void."). That was the standard used by the district court in the instant case, however, as already noted, the case cited was inapposite because it was clear that from the time of filing there was complete diversity of citizenship. In addition, like the Supreme Court, this Court has not decided the "egregious" standard applies.

Under the specific facts of the instant case—when there has been no adjudication of subject-matter jurisdiction by the district court--courts have *not* used the "arguable basis" standard and have used a "reasonable basis" standard when reviewing a 60(b)(4) motion. "When a district court has not explicitly noted why it assumed jurisdiction over a suit, appellate courts will independently examine the record to determine whether a reasonable basis existed for the lower court's implicit finding that it had jurisdiction" *Nemaizer v. Baker, supra;* also

*Steiner v. Atochem,* 70 Fed.Appx. 599 (2d Cir. 2003); *Baella-Silva v. Hulsey,* 454 F.3d 5 (1st Cir. 2006); *US v. Zimmerman,* No. 11-4604 (3d Cir. Aug. 13, 2012), applying a "reasonable basis" standard when the district court "did not make an express determination of its jurisdiction." In *Trevino v. Michelin North America, Inc.,* Civil No. B-04-165 (S.D. Tex. Mar. 23, 2006), the Court found that this Circuit had not addressed the particular issue or applied the "reasonable basis" standard, but determined that although it might have erroneously "granted the motion to dismiss" that nonetheless "this Court had a reasonable basis on which it determined it had diversity jurisdiction," citing *Nemaizer, supra.*

Even if a court imposes a reasonable or arguable basis standard, that standard still reverts to examination of jurisdiction of what is reasonable or arguable under the federal common law of subject-matter jurisdiction. If no arguable or reasonable basis whatsoever existed at the time of removal, then subject-matter jurisdiction did not exist, and any judgment of a court presuming to exercise its power under these circumstances is void. This jurisdictional doctrine is often fleshed out in the considerations of 28 U.S.C. § 1653 (see above), but is also repeated time and time again in pronouncements on void judgments.

This is consistent with other fundamental jurisdictional principles relating to purported *sub silentio* adjudication of subject-matter jurisdiction, law of the case doctrine, and *res judicata.* Judicial decisions *implicitly* rejecting attacks on a

federal court's subject-matter or personal jurisdiction, i.e., ones that proceed to the merits without discussing jurisdiction, have no precedential force on the jurisdictional issue. "When questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Pennhurst State School & Hospital,* supra. Likewise, any argument that after final judgment a district court had implicitly determined its own jurisdiction, and that thus this becomes "the law of the case," must be rejected in light of Rule 60(b)(4). *Wilmer v. Board of County Comm'rs of Leavenworth County,* 69 F.3d 406 (10th Cir.1995) spoke to Rule 60(b)(4). A jurisdictional fault was disregarded though "tentatively" raised. The court rejected the idea that a merits decision implicitly rejects all jurisdictional attacks because this would conflict with the directive of Rule 60(b)(4) and all the decisions based upon it. The Wilmer court concluded that a jurisdictional issue could still be examined where there had been no "*actual* determination" of the issue, even when previously raised, but never decided. See also *Getty Oil, supra* ("the district court made no findings or determination, specific or otherwise, regarding jurisdiction, and we therefore decline to presume, as the defendants-appellees suggest, that the district court actually considered the unresolved jurisdictional issues before ruling on the merits of the case.")

Thus, when there has been no explicit adjudication of subject-matter jurisdiction, the reasonable basis standard applies, consistent with plenary review. "[F]federal courts should not apply a higher standard to 60(b)(4) motions when there has been no explicit finding of subject-matter jurisdiction in the case that produced the judgment"; Stephen E. Ludovici, *Rule 60(b)(4): When the Courts of Limited Jurisdiction Yield to Finality,*66 Fla. L. Rev. 881, 905-07 (2014), applied in *AMERICAN REALTY CAPITAL PROPERTIES INCORPORATED v. Holland,* No. CV-14-00673-PHX-DGC (D. Ariz. Oct. 8, 2014). There was no reasonable basis at the time of filing for the district court in this case to have accepted jurisdiction.

## The District Court Decision

In its decision on the motions to vacate, the district court did not dispute Appellants' assertions that there were no allegations of citizenship in the record at the time of filing, or that such allegations that established minimal diversity of citizenship were required for jurisdiction to attach to the district court upon removal. The opinion initially mischaracterizes Appellants' arguments to be that merely because the personal plaintiffs were stateless United States citizens, that therefore there was no subject-matter jurisdiction. In fact, Appellants made essentially the same arguments presented in the instant brief.

The district court then went on to establish that minimal diversity existed, without reference to the time of invocation of jurisdiction, but also at the same time found that "this is not such a case" where "the jurisdictional error is egregious" (ROA.) The district court in essence, denied that there was any jurisdictional fault whatsoever, without reference to any of the jurisdictional case law cited by Appellants, but then also denied that the jurisdictional error was egregious. Cases where the "egregious" standard is truly applied are cases where there *was* an error in deciding jurisdiction (implicitly or explicitly), but it was not "egregious." "[T]he court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its *jurisdictional finding*, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment" *Matter of Edwards*, 962 F.2d 641 (7th Cir. 1992), addressing the "egregious" standard (emphasis added).

Respectfully, this acknowledgement by the district court of a jurisdictional fault, however, is circular in its reasoning. A lack of minimal diversity of citizenship in not only clearly jurisdictional, it is mandated by Art. III of the Constitution. *State Farm Fire & Cas. Co. v. Tashire, supra*; *Universal Communication Systems v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007), at fn 11; *Haynes v. Felder*, 239 F.2d 868 (5th Cir. 1957); *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004). Thus the absence of established minimal diversity of

citizenship necessary to rebut the "strong presumption" against federal jurisdiction in a removed case would, by definition, be "egregious." Either a jurisdictional fault in minimal diversity existed, or it did not. The egregious standard, then, as used by the district court, is also irreconcilable with the fact that in ruling on a Rule 60(b) (4) motion, the court has no discretion.

> When, however, the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion, the judgment is either void or it is not. Unlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not.
> *Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998) (internal citation removed)

In the instant case, the district court's decision that the jurisdictional defect in this case was not "egregious," without any previous determination of jurisdiction or any reference to any other standards such as "reasonable basis," was an impermissible exercise of discretion.

The district court also did *not* find that it had made an implicit, though erroneous, adjudication of minimal diversity at the time of removal. There was no remand motion as the jurisdictional defect passed unnoticed until the 2015 removal under the SPEECH Act in the second Canadian judgment case, where Appellee incorrectly alleged complete diversity when removing the case. The district court also accepted the uncontroverted fact that Leary and Perret were stateless United States citizens whose presence destroyed complete diversity, and that if (a) TPL was not shown to be a corporation for purposes of the federal common law of

diversity jurisdiction at the time of filing, and/or (b) Handshoe was not alleged to be the citizen of a state at the time of filing, then minimal diversity never existed when federal jurisdiction must have purportedly attached to the district court. The district court did not address the fact that it had to judge "all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing," which applies equally to challenges under Rule 60(b)(4); *Grupo Dataflux, supra.* See *Craig v. Ontario Corp.*, 543 F.3d 872 (7th Cir. 2008) (looking at the makeup of diversity at the time of filing in the context of Rule 60(b)(4)); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) (examining standing "at the time this action commenced" and applying *Grupo Dataflux* and *Caterpillar* in the context of considering voidness under 60(b)(4); "the Court has held that, where federal jurisdiction is invoked initially on grounds of diversity, and diversity did not exist at the time of suit, it cannot be remedied by a change in citizenship before judgment" citing *Grupo Dataflux*). The Court in *Caterpillar, supra,* found: "if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated" (emphasis in original). The Court clearly found that "holding that "finality, efficiency, and judicial economy" can justify suspension of the time-of-filing rule would create an exception of indeterminate scope." This is consistent with the Court's statements elsewhere regarding finality in the context of void judgments under Rule 60. In

*Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed. 2d 21 (1976), discussing the timing of filing a 60(b) motion, the Court stated: "the interest in finality is no more impaired in this situation than in any Rule 60(b) proceeding" (citations omitted). In *Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) the court observed: "[W]e give little weight to respondent's appeal to the virtues of finality. That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." In *Espinosa*, *supra*, the Supreme Court highlighted "Rule 60(b)(4)'s exception to finality."

However, the district court now posits a cure to the jurisdictional defect that occurred *after* the time of filing, i.e. that minimal diversity became apparent during the merits phase. This is essentially re-establishing this Court's test in *Atlas Global Group, LP v. Grupo Dataflux*, 312 F.3d 168 (5th Cir. 2002) after it was rejected by the Supreme Court.

The district court says diversity was cured by two necessary events: (1) long after the time of filing, Leary said Trout Point was a "Canadian corporation" (despite more numerous allegations by both sides at the time of filing that Trout Point was a "Nova Scotia limited company," and the fact Leary said it was a "Nova Scotia corporation" not a "Canadian corporation"); and (2) the record somehow and at some unnamed point revealed that Handshoe was a "citizen of a

state." Therefore, the district court says, subject-matter jurisdiction was cured and therefore the fault at the time of filing and after was not "egregious." This, however, is not the standard for deciding a Rule 60(b)(4) motion. A lack of subject-matter jurisdiction without any reasonable or arguable basis for establishing that jurisdiction at the time of filing, when there is no other basis for jurisdiction, is by definition "egregious."

The cases cited by the district court, where other federal courts have accepted, without questioning, that a party alleged at the time of filing to be a "Canadian corporation" is a citizen of a foreign state for purposes of diversity jurisdiction are not compelling.

> [D]etermination of one's State citizenship for diversity purposes is controlled by federal law, not by the law of any State. As is the case in other areas of federal jurisdiction, the diverse citizenship among adverse parties must be present at the time the complaint is filed.

*Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974) (internal citation omitted)

First, the district court never made any determination about TPL in the original proceeding. Second, *any* Nova Scotia company—including artificial entities that are not corporations for diversity purposes--is referred to in local law—the "law of any state"--as a "corporation." Companies, "although possessing "some of the characteristics of a corporation" and deemed a "citizen" by the law creating it — may not be deemed a "citizen" under the jurisdictional rule established for corporations" *Carden, supra.* The common law of Nova Scotia, for example, refers to unlimited liability companies as corporations, making this "label" of local

common law meaningless to the common law of U.S. federal jurisdiction; cf., for example, *Check Group Canada Inc. v. Icer Canada Corporation, 2010 NSSC 463* (CanLII), <http://canlii.ca/t/2fls8> ("Icer Canada Corporation ("Icer Canada"), is a Nova Scotia unlimited liability company";) also: *In re Smurfit-Stone Container Corp., supra.* Thus the "label" applied by Nova Scotia law to Nova Scotia companies does not established that TPL was a corporation for purposes of federal jurisdiction; *Americold, supra.*

Finally, the cases cited by the district court (a) did not address provincial companies within the Canadian federation; (b) relatedly only addressed "Canadian corporations"[5] not "Nova Scotia corporations," which is what Leary actually said (ROA.1025), and (c) "failed to address the issue of subject matter jurisdiction and, thus, cannot be said to have ruled on the issue" Clifton v. Heckler, 755 F.2d 1138 (5th Cir. 1985). The sole case cited by the district court where diversity jurisdiction was given cursory attention by the court was Langfitt v. Fed. Marine Terminals, Inc., 647 F.3d 1116, 1119 n.7 (11th Cir. 2011). However, even in that case, the existence of diversity was not an issue before the court, nor did the court indicate in what common law jurisdiction—provincial, federal, or territorial—FMT was created or registered.

---

[5]There exist federally incorporated "Canadian corporations" in Canada; TPL has never been alleged to be one of those. Like *Langfitt*, Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1408 (9th Cir. 1989) and Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc., 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) both dealt with "Canadian corporations" not "Nova Scotia limited companies".

Going back to Chief Justice Marshall, the Court has consistently held that it "is not bound by a prior exercise of jurisdiction in a case where [jurisdiction] was not questioned and it was passed *sub silentio*." <u>United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (Jackson, J.)</u> (citations omitted); see also <u>Steel Co., 523 U.S. at 91, 118 S.Ct. At 1011, Lewis, 518 U.S. at 351, 116 S.Ct. At 2180; Fed. Election Comm'n v. NRA Political Victory Fund, 513 U.S. 88, 97, 115 S.Ct. 537, 542-43, 130 L.Ed.2d 439 (1994)</u>.

Doe v. Tangipahoa Parish School Bd., 494 F.3d 494 (5th Cir. 2007).

The district court also took judicial notice of Handshoe's purported citizenship sometime during the proceeding with no notice to the parties; this too cannot determine the necessary threshold diversity.

Nor . . . can we use judicial notice to fill in the omitted facts. "If the court could take judicial notice of such matters there would be no necessity at all for alleging diversity of citizenship between ... parties in Federal court since as a general rule, what may be judicially noticed need not be pleaded." *Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir.1963)*.

*Penteco Corp. v. Union Gas System*, 929 F.2d 1519 (10th Cir. 1991).

The district court's sudden determination, after a motion to vacate, that TPL is a citizen of a foreign state for purposes of the federal common law of jurisdiction also flies in the face of established case law. "Applying this principle with reference to specific States' laws, we have identified the members of a joint-stock company as its shareholders, the members of a partnership as its partners, the members of a union as the workers affiliated with it, and so on."*Americold*, supra.

Thus, the district court's attempt to create diversity for the first time in response to the instant Rule 60(b)(4) motions does not cure the fatal jurisdictional defect.

## Case Law: Rule 60(b)(4) and Diversity Jurisdiction

There are few published cases that deal with the general facts in the instant case: a lack of diversity of citizenship alleged at the time of filing in a case that was in federal court when diversity was required for subject-matter jurisdiction and there has been a post-judgment motion to vacate underlying judgments as void. There are even fewer published cases, if any, that have addressed a lack of Art. III minimal diversity of citizenship in a removed case subject to a Rule 60(b)(4) motion when the district court never made an express and explicit determination of its subject-matter jurisdiction in the proceeding leading to final judgment.

Four cases addressing a lack of diversity jurisdiction in the Rule 60(b)(4) context are *Honneus v. Donovan,* 691 F.2d 1 (1st Cir.1982), *Baella-Silva v. Hulsey,* 454 F.3d 5 (1st Cir. 2006), *Gschwind v. Cessna Aircraft Co., supra,* and *Cook v. Toidze,* 950 F. Supp. 2d 386 (D. Conn. 2013).

The instant case can be distinguished from *Honneus v. Donovan, supra,* where the First Circuit affirmed the district court's denial of a motion to vacate because of the erroneous assumption of diversity jurisdiction. In *Honneus,* at the time of filing, the complaint incorrectly alleged that the citizenship of the parties was diverse, an allegation later discovered to be untrue. The appeals court found "the court's determination that it had jurisdiction may have been erroneous, but it was not void because the complaint, which Donovan never answered, sufficiently

*alleged* diversity" (emphasis added). Here, by contrast, neither the complaint nor the removal petition "sufficiently alleged diversity," and when challenged the Appellee "never answered," in yet the district court impermissibly accepted jurisdiction and later denied a motion to vacate. *Honneus* also affirmed the principle that the court must "measure[] all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Grupo Dataflux, supra.*

*Hulsey, supra,* did the same. In that case the court applied Rule 60(b)(4) and used the "arguable basis" standard to find that despite the fact that diversity of citizenship did not actually exist--"[t]he complaint indicates that the citizenship of the parties is not completely diverse"--nevertheless, the First Circuit found that "[t]he notice of removal [. . .] avers that complete diversity exists and specifically asserts that the nondiverse parties listed on the complaint are not real parties in interest but were in fact fraudulently joined in an effort to preclude removal to federal court." As in *Honneus,* complete diversity actually did not exist; nevertheless the Court found an "arguable basis" for diversity jurisdiction based on the removal allegations. Again, *Hulsey* is distinguishable from the instant case in that unlike the Notice of Removal in that case, the Notice of Removal filed by Handshoe made no allegations of citizenship whatsoever. No allegation of citizenship is equivalent to a complete and total absence of required diversity. As

in *Honneus*, the Hulsey court confined itself to the *allegations* at the time of filing
and the time of removal.

In *Gschwind*, as distinguished from the instant case, "[t]he citizenship of the
parties was not in dispute" but "the district court erroneously interpreted § 1332(a).
However, an erroneous interpretation of a jurisdictional statute does not render the
underlying judgment void." Gschwind involved an error in interpreting a diversity
statute; in the instant case, the Court did not apply the SPEECH Act's removal
statue at all, and the citizenship of the parties was unstated.

In *Toidze*, *supra*, a final judgment had issued. The substituted complaint did
not include a basis for jurisdiction; however, the original complaint alleged in a
conclusory way that the basis for jurisdiction was 28 USC §1332. In much the
same way here, Handshoe only conclusorily alleged "federal question" jurisdiction
and ignored constitutionally-required diversity. In *Toidze*, the personal parties were
all actually diverse, however they all also belonged to the same limited liability
company, which was also a party. The district court *sua sponte* raised the issue of
lack of subject matter jurisdiction under Rule 60(b)(4) on its own motion, noting
that a "limited liability company has the citizenship of its membership."

After concluding that the LLC was an indispensable party, the court applied
Rule 60(b)(4) to the facts. Referring to *Honneus*, the court stated:

> Case law distinguishes between "[a] void judgment [which] is one which,
> from its inception, was a complete nullity and without legal effect" and an

"error in the exercise of jurisdiction." *Id.* (internal citations omitted);*see also Steiner v. Atochem,* 70 Fed.Appx. 599 (2d Cir. 2003). Where the district court had a "'reasonable basis' for exercising jurisdiction, although the court may have erred in fact as to the existence of that jurisdiction,'" the court shall not grant a motion pursuant to Rule 60(b). *Steiner,* 70 Fed. Appx. At 600.

Just as in the instant case, in *Toidze* there had never been a motion to remand based on a lack of diversity jurisdiction. Distinguishing *Estate of Malone, Jr., et al. v. GE Credit Corp., et al.,* 1992 WL 610515, 1992 U.S. Dist. Lexis 22517 (S.D.Miss.1992), the Toidze court found that like in *Honneus, Hulsey,* and *Atochem,* the Malone court, "incorrectly determined that there was diversity of citizenship [ . . .] making the judgment erroneous, but not void."

Because of the lack of any remand motion, exactly as in the instant case, "the issue [of lack of diversity] was not before the court." The Toidze court therefore used the "reasonable basis" standard. In applying Rule 60(b)(4), the court properly looked to the allegations in the complaint to determine if diversity existed: "it is clear from the Substituted Complaint that diversity is not complete." As in the instant case, without any allegation of citizenship, there can be no minimal diversity. Again, applying *Honneus,* the Toidze court also concluded that unlike Honneus, Hulsey, and Atochem "there was no implicit determination by the court finding the existence of diversity." The same is true here; cf also *Getty Oil, supra.*

55

[A]lthough the plaintiffs try to argue that the court may have implicitly determined that Maya's Meals was a nominal party, the court never made such a determination, either directly or indirectly (or implicitly). Because the court never made an erroneous determination regarding subject matter jurisdiction, the default judgment is, instead, void for lack of subject matter jurisdiction under Rule 60(b)(4).

Toidze

It first must be noted that in applying Rule 60(b)(4) *Gschwind, Toidze, Hulsey,* and *Honneus* all adhered to the time of filing rule in these diversity cases; see also *Craig v. Ontario Corp., supra* and *Schreiber Foods, Inc. v. Beatrice Cheese, Inc., supra.* That is, the courts looked to the complaint (and in removed cases the removal petition as well) to determine subject-matter jurisdiction based on diversity of citizenship. The allegations of citizenship made at the time of filing and removal determined subject-matter jurisdiction under Rule 60(b)(4) motions.

In *Toidze*, the court refused to accept the argument that it had "implicitly" determined diversity existed when that issue was never before the court either directly or indirectly (including the lack of any remand motion). "[T]o be decided by necessary implication, the merits must at least have been *considered* by the court. Compare *In re England,* 153 F.3d 232, 235 (5th Cir.1998) (holding that court made no implicit determination as to a certain issue where there was no indication that it had even considered the issue . . ."; *Brown v. Astrue*, 597 F. Supp. 2d 691 (N.D. Tex. 2009). "We [. . .] decline to defer to the prior panel's exercise of jurisdiction as correct where the issue was neither raised by the parties nor

addressed by the court." *USPPS, ltd. v. Avery Dennison Corp.*, 647 F.3d 274 (5th Cir. 2011).

This is the same as the instant case where under Art. III, removal was not jurisdictionally (or constitutionally) possible without minimal diversity of citizenship, which was required by the SPEECH Act. The fact that the court accepted Handshoe's conclusory allegation of "federal question" did not equal an implicit determination that minimal diversity existed, particularly because no required allegation of citizenship of any party existed in the state court record or the removal petition. *Toidze,* alongside *Getty Oil* and *Grupo Dataflux,* stands for the rule that when there was no determination of the existence of diversity jurisdiction at the time of filing, erroneous or otherwise, and there was no reasonable basis for diversity jurisdiction in the record at the time of filing, then the case is a true example of a lack of jurisdiction amenable to a Rule 60(b)(4) motion to vacate. That is the situation of the instant case.

*Toidze* offers the closest parallel to the instant case in the 60(b)(4) context, and distinguishes cases in which there was an implicit finding of diversity from a situation where there was no such adjudication, implicit, indirect, or otherwise. Following the application of the law practiced in *Toidze*, including specific application of appellate case law, in the instant case, because the district court never made an erroneous determination regarding subject matter jurisdiction, the

judgments below are indeed void for lack of subject matter jurisdiction under Rule 60(b)(4).

## CONCLUSION

Therefore, due to a lack of subject matter jurisdiction the Court should reverse, remand the case for entry of an order vacating all previous district court judgments and orders in this case, and order that the district court remand the case to Hancock County Circuit Court.

Vaughn Perret and Charles Leary

By_____

Appearing Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Appellants has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit via the court's CM/ECF filing system which sent notification of same to the following:

<u>Counsel for Appellee</u>

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi  39466
Email:  ggeraldc@bellsouth.net

This the 16th day of September, 2016.

Charles Leary & Vaughn Perret

Charles Leary & Vaughn Perret
Email:  foodvacation@gmail.com
140 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
Canada
Telephone: (902) 761-2142
Facsimile: (800) 980-0713

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,852 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using OpenOffice 4.1.1 in Times New Roman font size 14.

Charles Leary

61